## Lettieri et al. v. Scranton School District et al.

*Harris, Hill, Warren & Henkelman,* for plaintiffs.
*Alphonsus L. Casey,* for defendants.

HOBAN, P. J., December 30, 1954.—Since summary judgment as permitted by Pa. R. C. P. 1098 is entered in these proceedings, rather than a formal adjudication and judgment nisi under the usual nonjury trial procedure, it seems proper to state of record the reasons for the action taken.

This case was brought before the court by the entry of an amicable action in mandamus and on a stipulation of facts filed. The question involved is whether or not plaintiffs, all teachers of the Scranton school system, are entitled to certain pay increments provided for in the plan of teacher employment and in-service professional training, referred to hereafter as the "Scranton plan", in addition to the mandated increments provided for by the Public School Code, first, in the amendment to the Code of 1911, which was adopted in 1947,[1] and subsequently in the revision of the code in 1949,[2] to which the teachers would be entitled as holders of masters' degrees.

On the stipulated facts it appears that between the years 1920 and 1933 the Scranton School District offered to teachers, as an incentive to increase their professional qualifications, certain pay increments based on a teacher's work in acquiring college credits in advanced professional education. These credits could be obtained by attending courses presented as extension courses by professors assigned by certain colleges or universities, or by credits obtained as a result of attending resident courses in approved colleges or universities. For obtaining 16 credits under that plan the teacher would be entitled to a yearly increment of $100 over the salaries already prescribed

[1] Act of July 5, 1947, P. L. 1266.
[2] Act of March 10, 1949, P. L. 30.

by law or by resolution of the board of school directors. For acquiring 32 credits the increment would be $200. All plaintiffs acquired either 16 or 32 credits and accordingly received the appropriate increment during the years up to the 1953-54 school year. The plan itself was dropped in 1933, one presumes because of the economic situation facing the school district at the time. However, plaintiffs' right to the Scranton plan increments was recognized up to 1953, when the school district omitted these increments from its salary schedules, on the theory that all plaintiffs had attained the maximum salary grades established by the legislature.

All plaintiffs during the term of their employment as teachers acquired masters' degrees from colleges or universities and so after 1947 became entitled to the increment provided therefor by the legislative mandate. What did not appear from the stipulated facts, however, was whether or not any of the credits obtained by the teachers and applied to establishing pay increments under the Scranton plan were also obtained and recognized for the purpose of earning masters' degrees. Accordingly we asked counsel for the parties to establish the factual information in the case of each teacher as to just what credits were applied to the earning of increments under the Scranton plan or to the earning of the master's degree from a college or university, or what credits may have been used for both purposes. Some substantial administrative difficulty has been encountered in developing this information, which we think is a matter which can much better be handled by administrative methods than by the somewhat difficult process of extended testimony on an issue of fact. We thought it advisable, therefore, to state in summary judgment the process of computation of the proper salary schedule for plaintiffs, preserving as Pa. R. C. P. 1098 permits the right to any plaintiff or to defendants, if necessary on cause shown, to reopen the judgment.

Our decision as to the formula is based on the idea that while the Scranton plan established a contract right in favor of plaintiffs who completed the plan and is not a gratuity, as suggested by defendants, nevertheless the subsequent legislative mandate amounts to an approval or extension to the State of the incentive plan for in-service advanced professional training, which was really pioneered by the Scranton School District, that the legislative mandate did not create a new and different obligation on the school board than had already been assumed by it. In other words, while plaintiffs have certainly earned by securing college credits during the term of their employment as teachers the right to increased pay, in our opinion they are not entitled to be paid twice for the same performance. Thus, a plaintiff having earned 32 credits is entitled to an increment. If the same 32 credits should be the basis for a master's degree, the teacher is entitled to the increment provided by the State. If, however, the same teacher has furnished additional credits under the Scranton plan which would entitle her either to the increment based on 16 or 32 additional credits, there is no reason why the extra performance involved over that required to obtain the master's degree should not entitle her to the increment contracted for under the Scranton plan. Or, if part of the credits earned under the Scranton plan are also used as part of the credits required to secure a master's degree, the teacher, if sufficient credits remain, would seem to have a perfect right to apply those to satisfaction of requirements of the Scranton plan.

Of the fact that the Scranton plan created a contract we have no doubt. All the elements of a contract are there, an offer by the school district, acceptance by the teacher, completed performance and an ultimate acknowledgment by the district that the performance had been completed, and it is unquestioned

law that a school district like any other municipal entity may make contracts within its proper sphere of operations and it may be held liable for said contracts.

As noted above, we think the uncertainties involved in the individual situations of these plaintiffs and the application of the judgment to each individual case are better resolved by administrative action. If any uncertainties remain which require the production of evidence to resolve, the judgment may be opened as to any individual concerned.

## Summary Judgment

Now, December 30, 1954, under the provisions of Pennsylvania Rule of Civil Procedure 1098, the right of plaintiffs to certain relief being clear to the court, summary judgment is entered as follows:

The School District of the City of Scranton and the directors thereof are ordered and directed to calculate the salary schedules for salaries to be paid to the various plaintiffs according to the following formula:

Compute: A. The teacher's minimum salary as mandated by the General Assembly of the Commonwealth of Pennsylvania. To that add

B. An increment of $200 to each teacher who has been awarded a master's degree by a recognized college or university. Thereupon add

C. Any general additional increment, bonus or cost of living increase given all of the Scranton School District teachers voluntarily by action of the board of directors of the district. Finally add

D. An additional increment of $100 or $200 as appropriate to each plaintiff who has acquired sufficient college credits under the Scranton plan between 1920 and 1933 to support such increments, provided, however, that no credit earned under the Scranton plan, which was also applied to the earning of a master's degree, shall be counted in computing credits authorizing this increment.